COURT OF APPEALS OF VIRGINIA

Present:  Judges McClanahan, Petty and Powell
Argued at Richmond, Virginia


MAURICE MEADE BROWN
                                                                OPINION BY
v.        Record No. 1034-08-2                      JUDGE WILLIAM G. PETTY
                                                                MAY 12, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Michael T. Hemenway for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


On June 11, 2007, Maurice Meade Brown was convicted of grand larceny in violation of

Code § 18.2-95.  On appeal Brown argues that the trial court erroneously allowed a witness to

testify to events he viewed on a video surveillance tape without requiring admission of the tape

itself in violation of the best evidence rule.[1]  In addition, Brown argues that the evidence was

insufficient to prove beyond a reasonable doubt that Brown committed grand larceny.  For the

following reasons, we disagree with Brown and affirm his conviction.

I.  BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the prevailing party

below, the Commonwealth, Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786

---

[1] Brown also argues that the witness' testimony was hearsay.  While he originally made a
hearsay objection along with his best evidence rule objection, when asked to state the basis for
his objection Brown chose to rely on the best evidence rule.  Because the trial court never ruled
on Brown's hearsay objection, we decline to consider this argument.

(2003), and we grant to that party all fair inferences flowing therefrom. Coleman v. Commonwealth, 52 Va. App. 19, 21, 660 S.E.2d 687, 688 (2008).

On October 4, 2006, Brown entered a Giant Foods store in Albemarle County with three other individuals: two males and one female. After all four individuals walked in, they separated and two walked through the beer aisle and two walked through the produce aisle. The group met back at the frozen food section and the three men—including Brown—grabbed twelve bags of crab legs. The men walked in a row, one behind the other, toward the bathroom in the back of the store. They went into the men's bathroom with the bags of crab legs in hand. When they walked out of the bathroom, "they had nothing" in their hands. They walked through the pharmacy toward the front of the store, never stopping to pay for anything at the checkout register. Once they were outside, they ran toward their car. Their female companion was already at the car, and the three men "jumped in" and drove away.

The store florist, Connie Wallace, observed the entire sequence of events. She testified that she saw the group walk into the store, separate, and reassemble at the frozen food section and grab the crab legs. Wallace informed the store security guard of what she believed to be suspicious behavior and followed the group to keep an eye on them. She saw the men take the crab legs into the men's bathroom and come out of the bathroom with nothing. She followed the group out of the store and saw them jump into their car. Before the car could drive out of sight, Wallace wrote down the license plate number and gave that information to the security guard. Wallace testified that, to her knowledge, the crab legs were never recovered.

Greg Moubray, who was employed by Giant Foods Asset Protection Division, testified that Wallace told him about the suspicious group. Moubray personally observed the group of three men—including Brown—run out of the store and jump into a gray Ford Taurus, which sped away. The woman was already at the car.

Moubray went upstairs to observe the store's video surveillance system that "record[s] things that are happening . . . at the time they are happening." Brown objected to Moubray testifying about what he saw on the video recording on two bases: hearsay and best evidence rule. The assistant Commonwealth's attorney replied that "[i]t's not hearsay - - it's an image." Brown chose to rely on his argument that Moubray's testimony would violate the best evidence rule. The trial judge then stated that "the best evidence rule applies to writing [sic] and therefore," she overruled the objection.

Moubray testified that on the security video, he saw the three men in the frozen seafood department taking bags of crab legs. There was no one else in the frozen seafood department at the time the three men took the bags of crab legs. Because the store has a video camera directly pointed at the crab legs and shrimp,[2] Moubray was able to count a total of twelve bags of crab legs between the three men. After the group took the bags, Moubray saw them walk into the bathroom corridor at which time he could no longer see their actions on the video. Then, Moubray saw an empty cart and all the crab legs were gone. The bags of crab legs were not found in the bathroom and, in fact, they were never recovered.

Moubray testified that on October 4, 2006, each bag of crab legs cost thirty-nine dollars and ninety-nine cents. However, if a customer had a Giant card, then a bag of crab legs cost twenty-nine dollars and ninety-nine cents. Thus, the total value of the bags of crab legs was at least three hundred and fifty-nine dollars and eighty-eight cents.

Based on this evidence, Brown was convicted of grand larceny and sentenced to ten years imprisonment with eight years and two months suspended. From this judgment, Brown appeals.

---

[2] According to Moubray, the video surveillance camera was directed toward the shrimp and crab legs because both of those were "hot item[s]."

## II. ANALYSIS

Brown claims the trial court erred by (1) admitting the testimony of Greg Moubray regarding what he observed on the surveillance video because that testimony violated the best evidence rule, and (2) finding the evidence sufficient to convict him of grand larceny in violation of Code § 18.2-95.[3]

### A. The Admissibility of Evidence

Ordinarily, we review questions regarding admissibility of evidence for an abuse of discretion, Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006), and "[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred," Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (citation and internal quotation marks omitted). However, "when the trial court makes an error of law" in the admission of evidence, "an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000). "Furthermore, such evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" Abney v. Commonwealth, 51 Va. App. 337, 345, 657 S.E.2d 796, 800 (2008) (quoting Michels, 47 Va. App. at 465, 624 S.E.2d at 678).

Brown contends that the trial court erred in allowing Moubray to testify as to what he observed from the surveillance video recording because his testimony violated the best evidence rule. Brown, without citing any authority, argues that the best evidence rule "controls the proof of the contents of *writings, recordings and photographs*." (Emphasis added). We disagree with Brown's characterization of the rule because we conclude that in Virginia, the best evidence rule

---

[3] Brown presents this argument in two questions presented and in two different arguments sections in his brief. He attempts to distinguish the questions presented and the arguments by claiming that the trial court erred in denying his motion to strike and in finding him guilty of grand larceny. However, because the arguments are literally identical under each heading and because both involve sufficiency of the evidence issues, we consider them together as one argument that the evidence was insufficient to convict him of grand larceny under Code § 18.2-95.

applies only to writings. Butts v. Commonwealth, 145 Va. 800, 816, 133 S.E. 764, 769 (1926); Randolph v. Commonwealth, 145 Va. 883, 889, 134 S.E. 544, 546 (1926); Folson v. Commonwealth, 23 Va. App. 521, 478 S.E.2d 316 (1996); Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 884 (1993); Myrick v. Commonwealth, 13 Va. App. 333, 339, 412 S.E.2d 176, 179 (1991). See also Charles E. Friend, The Law of Evidence in Virginia § 16.1 (6th ed. 2003).

Unlike many states that have codified or otherwise formally adopted rules of evidence, Virginia adheres to the common law rules of evidence. See Code § 1-200 (adopting the common law of England to the extent that it is not repugnant to our Bill of Rights and Constitution and except as altered by the General Assembly); Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 595 (1987) (stating that "we adhere" to the common law rules of evidence); Coal Riv. Coll. v. Eureka Coal Co., 144 Va. 263, 279, 132 S.E. 337, 342 (1926) (stating that "cases not covered by the [UCC statute governing parol evidence], expressly or by fair implication, are to be governed by the common law rules of evidence"); Anthony v. Commonwealth, 142 Va. 577, 583, 128 S.E. 633, 634 (1925) (recognizing the "legislature's authority to . . . change the common law rules of evidence"); Slaughter v. Smither, 97 Va. 202, 208, 33 S.E. 544, 546 (1899) (stating that "[t]he common law rule[s] of evidence . . . may be traced to a remote antiquity and [are] of the utmost importance"); N. & W. R. R. Co. v. Prindle and Wife, 82 Va. 122, 127 (1886) (applying the common law rules of evidence and commenting that those rules were "not altered by our law"). Therefore, in considering the scope of what has become known as the best evidence rule, we must consider its historical development.

The best evidence rule began as a broad, short, and convenient phrase that described a conglomerate of auxiliary probative rules "applicable to specific classes of evidential material, and designed to strengthen . . . the evidential fabric and *to secure it against dangers and*

- 5 -

*weaknesses pointed out by experience*." 4 John Henry Wigmore, Wigmore on Evidence §§ 1171 & 1174 (James H. Chadbourn rev. 1972) (emphasis in original). The phrase did not create these rules "by deduction from the principle implied in the phrase; but the phrase came to be used as descriptive of the rules already existing." Id. § 1174. Lord Hardwicke, sitting as chancellor, said that "[t]he judges and sages of the law have laid it down that there is but one general rule of evidence, the best that the nature of the case will allow." Omychund v. Barker, 26 Eng. Rep. 15, 1 ATK 22, 49 (1744). Even post American Revolution, we can trace opinions describing the rule as "[t]he best evidence which the nature of the case admits of, ought to be produced, and if it may be produced, inferior testimony is inadmissible." Lee v. Tapscott, 2 Va. (2 Wash.) 276, 280-81 (1796). Thus, the rule was merely a "general observation that when one sets out to prove something, one ought to prove it by the most reliable evidence available." Friend, supra, § 16-1.

The phrase "best evidence" initially included the original document rule, the hearsay rule, witness competency rules, and other rules that prefer reliable evidence to other, less reliable, evidence. Wigmore, supra, § 1172. However, almost all of the evidentiary rules that were originally encompassed in the "best evidence" phrase have been eliminated from the modern use of the term and are generally recognized as distinct rules in and of themselves except for one—the original document rule. Id. § 1173. Indeed, the phrase "'would probably have dropped naturally out of use long ago, if it had not come to be a convenient, short description of the rule as to proving the contents of a writing.'" Id. § 1173 (quoting James Bradley Thayer, Preliminary Treatise on Evidence 489 (1898)). See also Friend, supra, § 16-1 (stating that "many authorities prefer to avoid the term 'best evidence rule' entirely, and describe the modern principle governing the admission of writings by the term 'original document rule' or some similar term"). Since "the first quarter of the 1700s[,]" the original document rule was "regularly acknowledged in practice, and applied to all kinds of writings." Wigmore, supra, § 1177.

In Virginia, the best evidence rule is a legal term of art.  Bell v. Dorey Elec. Co., 248 Va. 378, 382, 448 S.E.2d 622, 624 (1994) (citing Black's Law Dictionary 160 (6th ed. 1990)); see also Black's Law Dictionary 153 (7th ed. 1999).  As a legal term of art, "the best evidence rule requires that 'where the *contents of a writing* are desired to be proved, the *writing* itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted.'"  Bradshaw, 16 Va. App. at 379, 429 S.E.2d at 885 (emphasis added) (quoting Randolph, 145 Va. at 889, 134 S.E. at 546; Butts, 145 Va. at 816, 133 S.E. at 769); see also Myrick, 13 Va. App. at 339, 412 S.E.2d at 179 (stating that the best evidence rule excludes secondary evidence only "when the terms of a writing or document are material").[4]  Our Supreme Court even characterized this principle as "elementary law."  Butts, 145 Va. at 816, 133 S.E. at 769.  We have, on at least one occasion, referred to the best evidence rule synonymously with the original document rule, which only applies to writings.  Myrick, 13 Va. App. at 339, 412 S.E.2d at 179.  Further, the original document rule is identical to our Supreme Court's definition of the best evidence rule.  Id.; Butts, 145 Va. at 816, 133 S.E. at 769.

The Boyd-Graves Conference of the Virginia Bar Association published A Guide to Evidence in Virginia, which "restate[s] the present law of evidence in Virginia in a single,

---

[4] Nonetheless, among the practicing bar and sometimes among our courts, the phrase "best evidence" is still sometimes used in a manner that connotes the evidential preference implied by the phrase that some evidence is better—or more reliable—than other evidence. See e.g., Jones v. Jones, 249 Va. 565, 457 S.E.2d 365 (1995) (stating that a bid at an open auction, as opposed to an appraisal, is the "best evidence" of the fair market value of the property sold at the auction).  But the phrase, when used in that sense, does not require the exclusion of the secondary evidence.  Id. (While the bid was the "best evidence" of the fair market value, the Court did not use the phrase to exclude the evidence of the appraisal.); see also Caterpillar Tractor Co. v. Hulvey, 233 Va. 77, 82, 353 S.E.2d 747, 751 (1987) (stating that the jurors' unanimous verdict is the "best evidence" of each juror's opinion in the case, but not using the phrase as an exclusionary rule); Walton v. Roanoke, 204 Va. 678, 683, 133 S.E.2d 315, 319 (1963) (stating that a blood test is the "best evidence" to prove that a person is intoxicated, but not requiring the exclusion of other evidence such as the odor of alcohol or the demeanor and conduct of the defendant).

organized body of principles for the convenience of judges and practitioners alike. It is not intended to change any aspect of Virginia law." A Guide to Evidence in Virginia i (2009). That publication describes the best evidence rule as follows: "[t]o prove the content of a writing, the original writing is required, except as otherwise provided in these rules, Rules of the Supreme Court of Virginia, or in a Virginia statute." Id. § 1002. A writing is defined as consisting of "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation or preservation." Id. § 1001. Moreover, our General Assembly has defined a writing as

> any representation of words, letters, symbols, numbers, or figures whether (i) printed or inscribed on a tangible medium or (ii) stored in an electronic or other medium and retrievable in a perceivable form and whether an electronic signature authorized by Chapter 42.1 (§ 59.1-479 et seq.) of Title 59.1 is or is not affixed.

Code § 1-257.

From this we conclude that the best evidence rule in Virginia applies only to writings and, clearly, a videotape is not a writing as understood at common law and as defined by Code § 1-257. Brown argues, however, that the essential purpose behind the best evidence rule—the preference for the original document rather than the memory of a witness as to its contents—should be applied to videotapes. In other words, he argues, when a party attempts to offer evidence of events recorded on a videotape, the original videotape is the best and most reliable evidence and must be produced. Brown would, therefore, have us expand the best evidence rule to apply to videotapes as well as writings. [5]

---

[5] We note that the Federal Rules of Evidence do exactly that by expanding the scope of the best evidence rule by requiring the original "writing, recording, and photograph." Fed. R. Evid. § 1001(1). The Rules further define a photograph to include videotapes. Fed. R. Evid. § 1001(2). Additionally, forty-two states have adopted rules identical or substantially similar to

In this case, Brown asks us to reverse a trial court for correctly applying the law as it existed at the time of trial. We decline to do so.[6] We believe that when a party seeks to abrogate or significantly limit, modify, or expand a common law rule of evidence that has been so venerably accepted that "the memory of man runneth not to the contrary," 1 William Blackstone, Commentaries on the Laws of England 67 (1765), the responsibility for doing so is primarily a function for the legislature, Williamson v. The Old Brogue, Inc., 232 Va. 350, 354, 350 S.E.2d 621, 624 (1986) (stating that "a decision . . . to abrogate such a fundamental rule as the one under consideration is the function of the legislative, not the judicial, branch of government"). This is because

> [a] legislative change in the law is initiated by introduction of a bill which serves as public notice to all concerned. The legislature serves as a forum for witnesses representing interests directly affected by the decision. The issue is tried and tested in the crucible of public debate. The decision reached by the chosen representatives of the people reflects the will of the body politic. And when the decision is likely to disrupt the historic balance of competing values, its effective date can be postponed to give the public time to make necessary adjustments.

Bruce Farms v. Coupe, 219 Va. 287, 293, 247 S.E.2d 400, 404 (1978).

---

the Federal Rules of Evidence expanding the application of the best evidence rule. Virginia has not chosen to join these jurisdictions in modifying the common law.

[6] We recognize that, on occasion, our Supreme Court has chosen to modify the common law by judicial decision. Weishaupt v. Commonwealth, 227 Va. 389, 399-400, 315 S.E.2d 847, 852 (1984) (rejecting so much of the English common law rule regarding the marital exemption to the crime of rape as inconsistent with the nature and character of our law and our culture both of which treat women as independent from their husband and capable of unilaterally withdrawing consent); Hanriot v. Sherwood, 82 Va. 1 (1884) (rejecting the English common law rule which renders expert testimony of handwriting comparison inadmissible and stating that the common law "adapts itself to the situation of the society, being *liberalized by the courts* according to the circumstances of the country and in the manner and genius of the people, so as to effect a reasonable and substantial, rather than literal compliance with its principles" (citations and quotation marks omitted) (emphasis in the original)). While we may have the power to modify the common law, we think that, as a matter of prudence, it should be used sparingly at the discretion of the court. Williamson v. The Old Brogue, Inc., 232 Va. 350, 354, 350 S.E.2d 621, 624 (1986). Here, we choose not to exercise that power.

Because we decline to expand the scope of the best evidence rule, we hold that the trial court did not abuse its discretion by admitting Moubray's testimony describing the contents of the surveillance videotape.

## B. Sufficiency of the Evidence

When addressing a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence" to support it. Code § 8.01-680. Under this standard, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also Seaton v. Commonwealth, 42 Va. App. 739, 747-48, 595 S.E.2d 9, 13 (2004); Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003).

Brown was convicted of grand larceny in violation of Code § 18.2-95. Larceny is a common law crime and is defined as "the wrongful or fraudulent taking of another's property without his permission and with the intent to permanently deprive the owner of that property." Britt v. Commonwealth, 276 Va. 569, 574, 667 S.E.2d 763, 765 (2008). Grand larceny is a form of larceny that "includes the taking, not from the person of another, of goods having a value of $200 or more." Id. (citing Code § 18.2-95). Brown argues that there is insufficient evidence to prove grand larceny because no witnesses saw him leave the store with the bags of crab legs. Thus, Brown contends that the Commonwealth failed to prove that he took the bags of crab legs from the store.

"There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Muhammad v. Commonwealth, 269 Va. 451, 479, 619 S.E.2d 16, 31-32 (2005), cert. denied, 547 U.S. 1136 (2006). Our Supreme Court has held that

"'circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Finney v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169, 173 (2009) (quoting Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000)). Furthermore, circumstantial evidence "is not viewed in isolation." Muhammad, 269 Va. at 479, 619 S.E.2d at 32. "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Id. (citation omitted).

In this case, the testimony from Wallace's personal observations, and Moubray's review of the surveillance videotape, established that Brown and two other men grabbed twelve bags of crab legs, having a total value of at least $359.88 from the frozen seafood counter and took them to the men's bathroom in the back of the store.[7] After a couple of minutes, the three men left the bathroom, walked out of the store, and ran to an awaiting car being driven by their female companion. When Moubray checked the bathroom and the hallway leading to it he was unable to locate any of the bags of crab legs. While no one saw the three men carrying the bags out of the store, the logical inference from this evidence is that the three men concealed the crab legs in their clothing while in the bathroom, and left the store. There is simply no other reasonable explanation for the disappearance of the twelve bags of crab legs.

### III. CONCLUSION

Because the best evidence rule only applies to writings, we conclude that Moubray's testimony regarding what he saw on the surveillance videotape did not violate the best evidence

---

[7] A bag similar in size to the bags containing the crab legs was displayed to the trial court but was not actually admitted into evidence and made part of the record.

rule. Further, we conclude that the evidence was sufficient to prove grand larceny beyond a

reasonable doubt. Therefore, we affirm.

<u>Affirmed.</u>