COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Beales
Argued by teleconference


REVERA LEO VENEY

MEMORANDUM OPINION* BY
v.        Record No. 2947-08-3           JUDGE JAMES W. HALEY, JR.
                                         NOVEMBER 3, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Humes J. Franklin, Jr., Judge

Michael J. Hallahan, II, for appellant.

Eugene Murphy, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Revera Leo Veney ("Veney") appeals his conviction for grand larceny in violation of

Code § 18.2-95. His sole argument is that the trial court erred in allowing two witnesses to

describe what they saw when they watched a surveillance videotape that was never admitted into

evidence at Veney's trial. Because none of Veney's arguments establish reversible error in the

trial court, we affirm.

                                     FACTS

At Veney's bench trial in the circuit court, Peggy Sprouse ("Sprouse") testified that she

visited the Wal-Mart store in the City of Waynesboro on December 21, 2007. Sprouse brought

her purse with her to the Wal-Mart. Inside the purse were her wedding and engagement rings,

her medicine, some bills, and her wallet. Inside the wallet were her driver's license, social

security card, and credit card. According to Sprouse, the rings had an approximate value of

$2,500.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At the store, Veney walked up to Sprouse and engaged her in conversation for about ten minutes. The two knew each other because Veney is the father of Sprouse's niece's son, though it appeared to Sprouse that Veney did not recognize her at first. Sprouse stated that Veney asked her questions about "this item that he was wanting to buy." Sprouse's purse was in her shopping cart before her conversation with Veney began and, when Veney began speaking to her, she turned around, facing Veney, and could no longer see the purse behind her. After the conversation and after Veney had walked away from her, Sprouse turned around and noticed that her purse was gone.

James Gibson ("Gibson"), who was seventeen years old at the time of the theft, testified that he acted as Veney's accomplice. When he and Veney were in the Wal-Mart, Veney suggested to Gibson that Veney would distract Sprouse while Gibson took the purse. According to Gibson, he and Veney agreed to share equally any cash that they found in the purse. Gibson testified that he took Sprouse's purse from the shopping cart when Sprouse was talking to Veney, that he left the purse on a shelf inside the store for Veney to find, and that he then left the store to wait for Veney outside. Gibson further testified that, when Veney met him about five minutes later outside of the store, Veney told him that there was no cash inside the purse, so Veney indicated that he would, "ditch it in the park."

After she noticed that her purse was missing, Sprouse asked for the police to be called. Officer Shaver ("Shaver") of the Waynesboro police then came to the Wal-Mart and spoke to Sprouse about what happened. Both Shaver and Sprouse testified that the Wal-Mart loss prevention employees showed them a surveillance video within an hour of the theft. Over Veney's objection, both Sprouse and Shaver testified that they saw Veney on the surveillance video and that they could see that Veney was holding an object under his right arm, but neither witness could be sure whether or not the object was the missing purse.

Sprouse also testified that she spoke to Veney again a few days later when the two met, by chance, at a restaurant. Veney told Sprouse that he was sorry about what happened, but that he had nothing to do with the theft of her purse. Sprouse replied that she wasn't concerned about the purse, but she wanted her rings back. She told Veney she would drop the charges if she could get the rings back, and offered a reward for their return. Veney responded: "I'll see what I can do." The next day, Sprouse received a phone call from Annetta Harris ("Harris"), who told Sprouse she had the rings. It was apparent from Harris' trial testimony that she knew both Gibson and Veney. After the call from Harris, Sprouse telephoned the police, and the police brought her rings back to her later that night. Sprouse never recovered her purse, but she later found one of the bills that had been inside the purse at the time of her trip to Wal-Mart in Basic Park.

ANALYSIS

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006) (quoting Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004)).

On brief, Veney formulates his question presented as follows:

> Whether the trial court erred in allowing Peggy Sprouse and Officer Shaver to testify as to the truth, not based on what they personally observed, but based upon what they observed while viewing a videotape; a videotape that was not available during the trial for examination by the defense, or to offer as evidence.

For the purpose of clarity, we should first explain that the position taken by Veney's counsel at oral argument dispenses with the need for us to consider an issue that otherwise seems essential to deciding the question presented as Veney has written it. Veney's objection to witness testimony "as to the truth" of what the witnesses observed on the videotape adopts

language from the legal definition of hearsay evidence. Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) ("'Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value on the credibility of an out-of-court asserter.'" (quoting McCormick on Evidence § 246, at 584 (2d ed. 1972))). But at oral argument, counsel for Veney specifically disavowed any hearsay objection to the witnesses' testimony. Accordingly, and despite the reference to "the truth" of what the witnesses observed in the question presented, we express no opinion on the application of hearsay principles to the witness testimony in this case.

What Veney does argue is that the trial court's ruling on the admissibility of the witnesses' testimony was inconsistent with our decisions in Bowman v. Commonwealth, 30 Va. App. 298, 516 S.E.2d 705 (1999), and Wilson v. Commonwealth, 29 Va. App. 236, 511 S.E.2d 426 (1999). We disagree.

In Bowman, the defendant was convicted of burglary after a witness identified him as the person in two video surveillance tapes. Bowman, 30 Va. App. at 300, 516 S.E.2d at 706. On appeal, the defendant argued that the trial court erred in admitting the witness' identification testimony for two reasons: 1) the identification was inadmissible opinion testimony by a lay witness who had not been qualified as an expert; and 2) the identification was inadmissible opinion testimony on the ultimate issue in the case. Id. at 302-03, 516 S.E.2d at 708. This Court's holdings in Bowman, with respect to the identification of the defendant on the surveillance videotapes,[1] were rejections of these arguments. Id. Nothing in Bowman suggests

---

[1] The Bowman decision also considered and decided a procedural issue unrelated to the merits of the defendant's arguments against the admissibility of the witness identification: the precedential value of a denial of a petition for appeal to the Supreme Court of Virginia. Bowman, 30 Va. App. 303-05, 516 S.E.2d at 707-09.

that a witness may not testify "as to the truth" of images he has seen on a surveillance videotape that has not been admitted into evidence, as Sprouse and Shaver did in this case. Nor does the opinion say anything about whether the admission of the videotape itself into evidence was a necessary predicate for the witness' identification testimony.

Wilson held that an adequate foundation is laid for the introduction of a surveillance videotape into evidence when a witness with personal knowledge testifies that the video fairly and accurately depicts what occurred; no additional testimony about the accuracy of the video camera is necessary for the admissibility of the video images. Wilson, 29 Va. App. at 239-40, 511 S.E.2d at 428. Unlike the video that Sprouse and Shaver discussed in their testimony, the disputed surveillance video in Wilson was admitted into evidence. Id. at 238, 511 S.E.2d at 428. The issue of whether a witness may describe the contents of a surveillance video that has *not* been admitted into evidence was not before the Court in Wilson. However, that *was* exactly the question recently considered by a panel of this Court in Brown v. Commonwealth, 54 Va. App. 107, 676 S.E.2d 326 (2009).

Brown concerned the application of the best evidence or original document rule. At oral argument, counsel for Veney insisted that his objection to the disputed testimony in this case is not based on the best evidence rule, and is thus *not* controlled by Brown. Veney claims to be advancing a different argument, that is, that the Commonwealth did not prepare an adequate foundation for the admissibility of Sprouse's and Shaver's testimony about the contents of the surveillance video. Because the necessary foundation for the admission of video images includes testimony from a witness with personal knowledge that they fairly and accurately depict what occurred, Veney argues, the introduction of the videotape must be a necessary prerequisite to verbal testimony about the contents of the tape; otherwise, the Commonwealth might manipulate the foundation requirements of Wilson by strategically deciding not to seek to admit the

videotape itself. Veney also argues that the original videotape would have been much more reliable evidence of what occurred than the personal recollections of the testifying witnesses.

We must disagree with Veney's argument for two reasons. First, the adversarial system in general, and the process of cross-examination specifically, impose serious limits on any potential for prosecutorial abuse created by the admissibility of the disputed testimony. Just because second-hand testimony regarding the contents of a video through a witness may be admissible at trial does not make such second-hand testimony the most persuasive way of presenting the Commonwealth's case to a jury, because any prosecutor who does not produce the relevant videotapes risks exposing his witness to a potentially damaging cross-examination by the defense regarding the source of the information about which the witness has testified. If defense counsel can elicit an admission from the witness that he was not physically present to observe the relevant events, but only observed them later on a surveillance video, defense counsel would do well to ask the witness where that video is and why that video has not been presented to the jury. And if the prosecution witness has no answer to this question, the Commonwealth's case may be in trouble. In this case, we note that counsel for Veney did not cross-examine Officer Shaver, the only police witness, as to why the surveillance videotape was not preserved.

Second, and perhaps more importantly, we disagree with Veney's contention that our decision in Brown does not control this case. It is true that Veney insists he is not making a best evidence argument, and, of course, Veney can attach any label he likes to the arguments he makes. But a litigant's characterization of the decisive legal issues implicated in a case is not binding on this Court. The best evidence rule is usually stated: "'where the contents of a writing are desired to be proved, the writing [the primary evidence] itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted.'"

Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 884 (1993) (quoting Randolph v. Commonwealth, 145 Va. 883, 889, 134 S.E. 544, 546 (1926)). The historical rationale for the rule is that propositions ought to be proved by the most reliable evidence available, see Brown, 54 Va. App. at 114, 676 S.E.2d at 329 (citing eighteenth century cases). This need for reliability is exactly the concern that, according to Veney, establishes the necessity that the surveillance video itself be admitted into evidence before a witness may testify as to the contents of the video.

As in this case, the defendant in Brown was convicted of grand larceny. Id. at 110, 676 S.E.2d at 327. A witness at his trial testified that he saw the defendant taking bags of crab legs through a store security video. Id. at 111, 676 S.E.2d at 328. On appeal, the defendant argued that the trial court erred in admitting this testimony without first requiring the admission of the videotape into evidence, in violation of the best evidence rule. Id. at 109, 676 S.E.2d at 327. This Court held that the evidence was properly admitted because the best evidence rule applies only to writings, and videotapes are not writings for the purposes of the rule. Id. at 115-17, 676 S.E.2d at 329-30. "Because we decline to expand the scope of the best evidence rule, we hold that the trial court did not abuse its discretion by admitting [the witness'] testimony describing the contents of the surveillance videotape." Id. at 118, 676 S.E.2d at 331. Because the principle of *stare decisis* applies to panel decisions of this Court, Commonwealth v. Burns, 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990), we are obliged to reach the same conclusion in Veney's case.

## CONCLUSION

The trial court did not abuse its discretion in admitting Sprouse's and Shaver's testimony describing what they saw on the store surveillance videotape. Veney's conviction is affirmed.

Affirmed.