COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued by videoconference


CHRISTOPHER NEIL DOTSON

MEMORANDUM OPINION[*] BY
v.      Record No. 1599-23-3         JUDGE ROBERT J. HUMPHREYS
OCTOBER 15, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Elena Kagan, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Ryan D. Beehler, Assistant Attorney General (Jason S. Miyares,
Attorney General; Jessica M. Bradley, Assistant Attorney General,
on brief), for appellee.


Christopher Neil Dotson appeals his convictions, following a bench trial, for forgery,

uttering a forged check, and attempting to obtain money by false pretenses in violation of Code

§§ 18.2-27, -172, and -178.[1]  On appeal, Dotson argues that the trial court erred when it admitted

the Commonwealth's Exhibits 1, 3, and 4 in violation of the best evidence rule.  For the

following reasons, we disagree and affirm the convictions.


---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Dotson was also indicted for attempting to commit identity fraud.  The trial court struck this charge after the Commonwealth's case-in-chief.  We also note that the trial court's August 15, 2023 final order states that Dotson was convicted and sentenced for attempting to obtain money by false pretenses but erroneously cites to only Code § 18.2-178 rather than both Code §§ 18.2-27 and -178.  We remand the matter to the trial court for the sole purpose of correcting this clerical error.  *See* Code § 8.01-428(B).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On October 20, 2021, Iris Allison was working as the money center manager at Dodge's Southern Fried Chicken and convenience store in Bassett, Virginia. Dotson entered Dodge's and stated that he wished to cash a $495 payroll check. Because Dotson was a new customer, Allison asked for his photo identification card and had him fill out a new customer form. The form required all new customers to provide personal information including their social security number and a thumb print.

After Dotson filled out the form, Allison informed him that she would have to call the check's maker to verify the check's authenticity. Dotson drew Allison's attention to his work phone number, stated that his supervisor was John Mays, and claimed that Mays could verify the check.

After creating a new customer account for Dotson in Dodge's database, Allison scanned the check and learned that the check's maker, J Kuntryboy Beatz LLC, was not in Dodge's database. Consequently, Allison looked up J Kuntryboy Beatz LLC and discovered that Jeremy Huffman was the owner. Allison called Huffman to verify the check's authenticity. Allison explained that she did not call Mays because it was Dodge's policy to independently verify the maker of the check's information and the check's authenticity.

While Allison was on the phone with Huffman, Dotson left the store. Dotson returned minutes later and asked Allison if she was going to call Mays. Allison informed Dotson that she was talking to the check's maker and that the maker was verifying the check. Dotson left the store again. When Dotson returned a second time, he stated something to Allison that she did not hear and left the store a final time. Dotson left the check and his photo identification card on the counter and did not return for them.

Over Dotson's objections, the Commonwealth admitted a photograph of the check Dotson tried to cash on October 20, 2021; a photograph of Dotson's photo identification card; a photograph of the new customer form Dotson filled out that evening; and a photograph of Allison's computer screen that depicted Dodge's database with Dotson's photograph and a photograph of the check.[2]

Huffman testified that in August 2021 he started J Kuntryboy Beatz, LLC. In October 2021, Huffman opened a business checking account at First Horizon Bank for J Kuntryboy Beatz, LLC. The checks were not prefilled. Huffman used the First Horizon account to pay business bills and himself; Huffman was the only employee of J Kuntryboy Beatz, LLC in October 2021. Several days before this incident, his checkbook for the J Kuntryboy Beatz, LLC account was stolen from his truck.

Late one evening in October 2021, Huffman learned from Dodge's convenience store that someone was attempting to cash one of his stolen checks. When shown a picture of the check Dotson tried to cash at Dodge's, Huffman testified that he recognized the check as one of his stolen J Kuntryboy Beatz, LLC checks but did not recognize the handwriting on the check or the signature at the bottom of the check. Huffman stated that he did not give anyone permission to

_____

[2] Although Dotson objected to the admission of Commonwealth's Exhibit 2—a photograph of his photo identification card—at trial, he has abandoned that argument on appeal.

fill out this check, that he did not know Dotson, that Dotson did not work for him or his company, and that he had never written a check to Dotson out of the J Kuntryboy Beatz, LLC account.

At the conclusion of argument from counsel, the trial court convicted Dotson of forgery, uttering a forged check, and attempting to obtain money by false pretenses. The trial court sentenced Dotson to 1 year of active incarceration with 5 years and 12 months suspended. Dotson appeals.

ANALYSIS

Dotson argues that the trial court erred when it admitted Commonwealth's Exhibits 1, 3, and 4 in violation of the best evidence rule. "A trial court's decision to sustain or overrule a best evidence objection, like other decisions about the admissibility of evidence, is reviewed for abuse of discretion." *Jennings v. Commonwealth*, 65 Va. App. 669, 673 (2015).

Dotson asserts that all three exhibits were writings admitted to prove their contents and, consequently, "the Commonwealth was required to introduce the original writing unless these writings fell into an exception to the general rule." Dotson contends that each exhibit met no exception to the best evidence rule articulated in Virginia Rules of Evidence 2:1003, 2:1004, and 2:1005. Dotson also contends that the challenged exhibits were inadmissible as duplicate originals because he disputed the exhibits' contents with contemporaneous objections, when he moved to strike the charges, and during his argument in summation. He claims that because the trial court's rulings were influenced by a mistake of law, it abused its discretion when it admitted Commonwealth's Exhibits 1, 3, and 4.

> The "best evidence rule," which made its appearance in the English law in the early part of the eighteenth century, was not originally a "rule," but rather "a general observation to the effect that when one sets out to prove something, one ought to prove it by the most reliable evidence available."

*Dalton v. Commonwealth*, 64 Va. App. 512, 521 (2015) (quoting Charles E. Friend & Kent Sinclair, *The Law of Evidence in Virginia* § 18-1 (7th ed. 2012)).  "Comments to this effect appear in the earliest Virginia cases: '[t]he best evidence which the nature of the case admits of, ought to be produced, and if it may be produced, inferior testimony is inadmissible.'"  *Id.* at 522 (alteration in original) (quoting *Lee v. Tapscott*, 2 Va. (2 Wash.) 276, 280-81 (1796)).

"Today, however, this rule is much narrower."  *Id.*  "Indeed, it is well-established in modern practice that 'the best evidence rule in Virginia applies only to writings.'"  *Id.* (quoting *Brown v. Commonwealth*, 54 Va. App. 107, 116 (2009)).  For purposes of the best evidence rule, a writing consists of "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation or preservation."  Va. R. Evid. 2:1001(1).

"[W]here the contents of a writing are desired to be proved, the writing itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted."  *Brown*, 54 Va. App. at 115 (emphasis omitted) (quoting *Bradshaw v. Commonwealth*, 16 Va. App. 374, 379 (1993)).  Because of modern means of mechanical reproduction, our caselaw has recognized that some copies may "properly be treated as a 'duplicate original'" and admitted into evidence without requiring proof that the original was unavailable.  *Allocca v. Allocca*, 23 Va. App. 571, 579 (1996); *see Frere v. Commonwealth*, 19 Va. App. 460, 466-67 (1995) (treating a photocopy as a duplicate original and admitting it into evidence without requiring proof that the original was unavailable).

Proper circumstances exist to treat a photocopy as a duplicate original when the accuracy of the photocopy is not disputed.  *See Frere*, 19 Va. App. at 466 (emphasizing that the appellant never asserted that the photocopy was inaccurate); *Myrick v. Commonwealth*, 13 Va. App. 333,

339 (1991). Under Virginia Rule of Evidence 2:1005(g), a photograph of a document qualifies as a copy for purposes of the best evidence rule.

Although Dotson objected to the photographs' admission at trial under the best evidence rule, he never explicitly argued that the photographs were inaccurate or that they had been manipulated. Instead, Dotson continuously requested that the original of each image be produced and that the Commonwealth articulate why it could not present the original in strict application of Virginia Rule of Evidence 2:1002.

Here, the proper circumstances existed to treat the photographs of the check, the new customer form, and the computer database as duplicate originals. Allison testified that on October 20, 2021, while she was working as a teller at Dodge's, Dotson attempted to cash a check for $495. Because Dotson was a new customer, Allison had Dotson fill out a standard new customer form and present his photo identification card. After Dotson completed the form, Allison keyed in Dotson's information and scanned the check into Dodge's database. When the Commonwealth showed Allison photographs of the check, the new customer form, and the computer database, she attested that each photograph accurately represented the check Dotson handed her, the form she witnessed him fill out, and her computer that evening. Because the contents of these documents were not in dispute, there was no useful purpose for requiring the production of the originals. Consequently, the trial court did not abuse its discretion when it admitted the photographs without regard to the availability of the originals.

CONCLUSION

For the reasons stated above, we affirm the trial court's decision. We note that although the final order correctly states that Dotson was convicted for attempting to obtain money by false

pretenses it fails to cite to both Code §§ 18.2-27 and -178.  Accordingly, we affirm the trial

court's decision, but remand the case for correction of a clerical error in the sentencing order.

*Affirmed and remanded.*