COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Felton
Argued at Alexandria, Virginia


ROBERT P. MICHELS

                                                    OPINION BY
v.        Record No. 2008-04-4          CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                   JANUARY 17, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

Eric E. Clingan for appellant.

Stephen R. McCullough, Assistant Attorney General (Judith
Williams Jagdman, Attorney General, on brief), for appellee.


Robert Michels (appellant) appeals his conviction by a jury of three counts of obtaining

money by false pretenses in violation of Code § 18.2-178.  He argues that the introduction of

documents from the Delaware Secretary of State, which certified that two entities were not

corporations licensed in Delaware, violated his Sixth Amendment rights.  He contends that

because such records were "testimonial hearsay," his rights guaranteed to him by the

Confrontation Clause were violated when the documents were introduced at trial without a

showing that the Delaware Secretary of State was unavailable and that he had a prior opportunity

to cross-examine her.  We hold that the two certificates were not "testimonial hearsay," that they

were introduced pursuant to a firmly rooted hearsay exception, and affirm the jury verdict.[1]

_____
    [1] Because we find that the admission of the certificates did not violate appellant's Sixth
Amendment rights, we need not address the Commonwealth's harmless error argument.

## I. Background

### A. HGL

On appeal, we review the evidence and all reasonable inferences flowing therefrom in the light most favorable to the Commonwealth, the party prevailing below. Wilson v. Commonwealth, 46 Va. App. 408, 413, 617 S.E.2d 431, 433 (2005). So viewed, the evidence establishes that in September 2002, appellant met Allison Formal (Formal) through an online dating website. At that time, Formal was the vice-president of a biotechnology company and appellant offered to help her with company investments. Appellant represented to Formal that he was the retired chief executive officer of a large company, which he sold for millions of dollars. He also told Formal that he owned a plane located in a hangar at Washington Dulles International Airport.

In November 2002, appellant began to discuss a company called Hydrogeologic (HGL) with Formal. Appellant represented that he was a close friend of one of the founders of HGL, John Robertson (Robertson), because their planes were located in the same airport hangar. Appellant told Formal that he could invest up to one hundred thousand dollars in HGL stock before the company had its initial public offering based on his friendship with Robertson. However, any investment could only be made in his name. On December 20, 2002, Formal wrote a check to appellant in the amount of ten thousand dollars to invest in HGL's stock. Formal wrote a second check for five thousand dollars to appellant for the same purpose in January 2003. Formal never received any HGL stock.

Robertson testified at trial that HGL never had plans to conduct an initial public offering; that he was never a friend of appellant; and that he never owned an airplane.

B.  Formal Properties Trust, L.L.C.

In January 2003, Formal decided to obtain a real estate license.  Appellant proposed that he and Formal incorporate into a limited liability company (L.L.C.) in order to channel their investments in real estate.  The L.L.C. was to be called Formal Properties Trust, L.L.C., and was to be incorporated by appellant in Delaware.  Appellant and Formal agreed to each contribute one hundred thousand dollars in order to form the company.  Formal wrote two checks, each for fifty thousand dollars, to Michels and Associates, L.L.C., which appellant stated was an existing entity duly licensed in Delaware.

In June 2003, appellant told Formal that Formal Properties Trust, L.L.C., had been licensed in Delaware.  However, appellant later admitted to the police that he never formed the entity.  Formal made numerous requests about her investments and later, in response to appellant's evasive replies, asked for her money back.  Finally, Formal demanded that an independent accountant review the L.L.C. documents.  Appellant refused and shortly thereafter Formal filed a complaint with the police.

Appellant was indicted on four counts of obtaining money by false pretenses in violation of Code § 18.2-178.  In preparation for trial, a Fairfax County police detective requested and received two certified documents from the Delaware Secretary of State.  The Secretary of State certified that after completing a search of Delaware L.L.C. records, an entity named "Formal Properties Trust, L.L.C." did not exist in Delaware.  She certified in a second document that "Michels and Associates, L.L.C." was not a company licensed to do business in Delaware.  The trial judge denied appellant's motion *in limine* to have the two certificates excluded.  At appellant's jury trial, the Commonwealth introduced both certificates over appellant's objection that the introduction of such documents violated his Sixth Amendment rights.  Appellant was convicted of three of the four counts of obtaining money under false pretenses.

II. Analysis

The sole issue raised on appeal is whether the trial court erred by allowing into evidence the certificates from the Delaware Secretary of State certifying that the two entities were not limited liability companies licensed in Delaware. Appellant contends that these documents were testimonial in nature and, therefore, their admission in his criminal trial violated his Sixth Amendment rights because there was no showing by the Commonwealth that the Delaware Secretary of State was unavailable and that appellant had a prior ability to cross-examine her. We disagree, and find that the certificates were not testimonial and therefore were properly admitted by the trial judge.

Decisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." Breeden v. Commonwealth, 43 Va. App. 169, 184, 596 S.E.2d 563, 570 (2004) (citation omitted). Whether the certificates submitted by the Delaware Secretary of State are "testimonial hearsay," though, is a question of law, reviewed *de novo* by this Court. Conkling v. Commonwealth, 45 Va. App. 518, 520-21, 612 S.E.2d 235, 237 (2005); see United States v. Hendricks, 395 F.3d 173, 176 (3d Cir. 2005).

The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This procedural guarantee applies to state prosecutions. Pointer v. Texas, 380 U.S. 400, 406 (1965). The United States Supreme Court has emphasized that the primary objective of the Confrontation Clause is to preclude the admissibility of formal statements obtained through *ex parte* examination or interrogation initiated by government officials in anticipation of criminal litigation. Crawford v. Washington, 541 U.S. 36, 51 (2004). The focus, therefore, is necessarily on witnesses against the accused. Id. Witnesses are those

who "bear testimony," i.e., who make a solemn declaration "for the purpose of establishing or proving some fact." Id. The Court elaborates: "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. Thus, the Confrontation Clause is aimed at protecting criminal defendants from those people making accusations against them. Id. at 43 ("the right to confront one's accusers is a concept that dates back to Roman times"), and at 46 ("our constitution is, that the person shall see his accuser" (citation omitted)); see also Va. Const. art. 1, § 8 ("in criminal prosecutions a man hath a right . . . to be confronted with the accusers and witnesses").

While Crawford did not define the scope of what evidence is "testimonial," the Court indicated that business records are not testimonial "by their nature." Crawford, 541 U.S. at 56 ("[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial-- for example, business records"). Additionally, Chief Justice Rehnquist, in his concurring opinion, remarked "the Court's analysis of 'testimony' excludes at least some hearsay exceptions, such as business records and official records. To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process." Id. at 76 (Rehnquist, C.J., concurring) (citation omitted); see also Riner v. Commonwealth, 268 Va. 296, 322-23, 601 S.E.2d 555, 570 (2004) (business records are not testimonial hearsay within the meaning of Crawford).

While we have not yet considered the applicability of Crawford to records of this type, several of our sister courts who have considered similar issues have determined that documents establishing the existence or absence of some objective fact, rather than detailing the criminal wrongdoing of the defendant, are not "testimonial." In People v. Shreck, 107 P.3d 1048 (Colo. Ct. App. 2004), the court considered the affidavits of court personnel verifying the authenticity

of a criminal record and determined that such documents were not testimonial.  <u>Id.</u> at 1060-61.

The court explained:

> <u>Crawford</u> applies to out-of-court statements by witnesses who would have testified at trial to past events or facts, but are attempting to testify *ex parte* through an affidavit in lieu of live testimony.  In contrast, the affidavits at issue here were provided solely to verify the chain of custody and authenticity of the underlying documentary evidence.

<u>Id.</u> (citation omitted).

Similarly, the Supreme Judicial Court of Massachusetts considered the certified results of laboratory tests and found they were not testimonial.  <u>Commonwealth v. Verde</u>, 827 N.E.2d 701, 705 (Mass. 2005).  That court reasoned, "[c]ertificates of chemical analysis are neither discretionary nor based on opinion; rather, they merely state the results of a well-recognized scientific test."  <u>Id.</u>  The court concluded that such documents were not akin to the "'principal evil at which the Confrontation Clause was directed . . . particularly its use of *ex parte* examinations as evidence against the accused'" but were instead more similar to routine business records.  <u>Id.</u> at 706 (quoting <u>Crawford</u>, 541 U.S. at 50).  The Court of Appeal of California also considered whether laboratory results were testimonial, and found that they were not.  <u>People v. Johnson</u>, 18 Cal. Rptr. 3d 230 (Ct. App. 2004).

> "There is an evident distinction between a transcript of former live testimony and the type of traditional 'documentary' evidence . . . that does not have, as its source, live testimony.  [T]he need for confrontation is particularly important where the evidence is testimonial, because of the opportunity for observation of the witness's demeanor.  Generally, the witness's demeanor is not a significant factor in evaluating foundational testimony relating to the admission of evidence such as laboratory reports, invoices, or receipts, where often the purpose of this testimony simply is to authenticate the documentary material . . . ."

Id. at 233 (quoting People v. Arreola, 31 Cal. Rptr. 2d 631, 639 (1994)).  The court concluded that since the laboratory results were routine documentary evidence, and were not substituting for live testimony, they were not testimonial in nature.  Id.

Likewise, in Napier v. State, 827 N.E.2d 565 (Ind. Ct. App. 2005), the court found that documents verifying that the operator of a breathalyzer was certified and that the machine was in good working order were not testimonial.  Id. at 569.  The court reasoned that the Confrontation Clause was not aimed at protecting the defendant from such evidence because it did not have a "bearing on the issue of guilt or innocence."  Id.  Moreover, the court found that it would be "unreasonable" to have someone routinely testify at court that the machine operator was licensed and that the machine was in working order because it would be a great burden on the state's resources.  Id.

Many courts have found that certificates documenting the absence of an official record are not testimonial.  Some cases rely on the fact that these documents are business records. United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005) (finding a certificate that acknowledged an absence of any record of consent by the United States for appellant to enter the country was not testimonial).  See also United States v. Mendoza-Orellana, 133 Fed. Appx. 68, 70 (4th Cir. 2005) (holding that a certificate of nonexistence of record was not testimonial); State v. N.M.K., 118 P.3d 368, 372-73 (Wash. Ct. App. 2005) (deciding that a certificate of a licensing agency recognizing that no record of a license for appellant existed was not testimonial).  The Ninth Circuit considered the admissibility of a certificate of nonexistence of record and noted that while the certificate was prepared in anticipation of litigation, an issue addressed by Crawford, "the document [the] certification addresses is part of a class of documents that were not prepared for litigation."  United States v. Cervantes-Flores, 421 F.3d 825, 833 (9th Cir. 2005).  Furthermore, the certificate "does not resemble the examples of testimonial evidence

given by the [Supreme] Court." Id. See also State v. Carter, 114 P.3d 1001, 1006 (Mont. 2005) (deciding that a certification report for a breath analysis instrument was not testimonial because the report was "not accusatory"); State v. Dedman, 102 P.3d 628, 635 (N.M. 2004) (finding that a blood alcohol report was not testimonial because the reports were prepared in a non-adversarial setting such that "the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present" (citation omitted)); People v. Durio, 7 Misc. 3d 729, 736 (N.Y. Sup. Ct. 2005) (deciding that an autopsy report was not testimonial); State v. Cook, 2005 Ohio 1550, ___ (Ohio Ct. App. 2005) (holding that an affidavit by a custodian certifying that he kept records in the ordinary course of business was admissible because the affidavit "is not evidence against appellant"); Denoso v. State, 156 S.W.3d 166, 182 (Tex. App. 2005) (determining that an autopsy report was not testimonial). We agree with this rationale.

The documents certified by the Delaware Secretary of State are not testimonial for two primary reasons. First, the certificates are not by their nature accusatory and do not describe any criminal wrongdoing of appellant. Rather, they are a neutral repository of information that reflects the objective results of a search of public records. In addition, the documents do not resemble *ex parte* examinations, "the principal evil at which the Confrontation Clause was directed." Crawford, 541 U.S. at 50.

Crawford emphasized that a principal aim of the Confrontation Clause is to protect a criminal defendant from accusations of criminal wrongdoing. Crawford, 541 U.S. at 43, 46. The certificates prepared by the Delaware Secretary of State cannot be categorized as accusing appellant of a crime. The certificates verify that "Formal Properties Trust, L.L.C." and "Michels and Associates, L.L.C." do not exist as limited liability entities in Delaware. In the documents, the Delaware Secretary of State does not describe past events or facts implicating the defendant

- 8 -

in any criminal scheme, but rather certifies that a search has been conducted and particular records do not exist.  See Shreck, 107 P.3d at 1060-61.  The search results are neither "discretionary nor based on opinion; rather, they merely state the results of a well-recognized . . . test."  Verde, 827 N.E.2d at 705.

Additionally, the certificates were not prepared in a manner resembling *ex parte* examination.  The Supreme Court in Crawford conducted an extensive historical analysis of the Confrontation Clause, ultimately concluding that the "principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused."  Crawford, 541 U.S. at 50.  While the certificates were requested by a law enforcement officer, the reports were prepared in a non-adversarial setting in which "the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present."  Dedman, 102 P.3d at 635.  The Delaware Secretary of State was not asked questions regarding appellant nor was she probed for information about appellant based on her personal knowledge.  Rather, an officer requested that she prepare a document certifying the results of a routine search of business records, as is done for any number of reasons.

The documents were not accusatory, and they were not obtained in a manner resembling an *ex parte* examination.  As a result, they are not "testimonial hearsay."  The Commonwealth, therefore, was not required to prove that the Secretary of State was unavailable and that appellant had a prior opportunity to cross-examine her.

Another question left open in Crawford is whether non-testimonial hearsay must satisfy the rule of reliability espoused in Ohio v. Roberts, 448 U.S. 56 (1980).  The certificates from the Delaware Secretary of State fall within the business records exception to the hearsay rule, which is a firmly-established exception.  Parker v. Commonwealth, 41 Va. App. 643, 654, 587 S.E.2d

749, 754 (2003); see also Hodges v. Commonwealth, 45 Va. App. 735, 761-62 & n.9, 613 S.E.2d 834, 846 & n.9 (2005) (after noting that Crawford was inapplicable because the statements at issue were not "testimonial," the panel held that the trial court did not err in admitting the challenged statements because they fell within a firmly-rooted exception to the hearsay rule). Therefore, these documents would be admissible under Roberts. Roberts, 448 U.S. at 66. As a result, we assume but need not decide today that Roberts still applies to all non-testimonial hearsay after the Crawford decision. See Crawford, 541 U.S. at 68.

Accordingly, we affirm the judgment of the trial court.

Affirmed.