# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Dabney L. Carter

July 12, 2010

Case No. 08-463

BY JUDGE EDWARD L. HOGSHIRE

In this criminal case, the Defendant, Dabney L. Carter, has been charged with driving after having been declared a habitual offender as a second or subsequent offense. The Commonwealth of Virginia has filed a Motion in Limine regarding the admissibility of a DMV transcript in light of the United States Supreme Court's recent decision, *Melendez-Diaz v. Massachusetts*, decided on June 25, 2009. On October 22, 2009, the Court conducted an evidentiary hearing and took the motion under advisement. The Commonwealth and Defendant filed their briefs on January 25, 2010, and March 5, 2010, respectively, with final arguments being conducted on June 10, 2010. For the reasons stated below, the Court grants the Commonwealth's Motion in Limine.

## Statement of Facts

For the purposes of this Motion, the facts surrounding the police stop and arrest are not in dispute.

On September 22, 2008, an officer with the Charlottesville Police Department made a traffic stop on the vehicle driven by Dabney Carter after the officer saw Defendant's vehicle make a left turn at a red light.

(Prelim. Hr'g Tr. 6, November 6, 2008.) In response to the officer's request for Defendant's license and registration, Defendant stated that he did not have a driver's license, and he provided his identifying information in lieu of his license. (*Id.* at 6–7.) When the officer ran a check on the Defendant's information, the officer found that the Defendant's license had been revoked due to a habitual offender determination and that the Defendant had a prior conviction for driving after being declared a habitual offender. (*Id.* at 7.) A transcript of Defendant's driving record as maintained by the Virginia Department of Motor Vehicles ("DMV") was admitted at the preliminary hearing held on November 8, 2008. (*Id.* at 8.) The DMV transcript contains the Defendant's habitual offender determination. (Dabney L. Carter Trans. of Driver History Record 4, July 1, 2007.)

The director of Data Management Services within the DMV testified with regard to DMV records at the hearing on the Commonwealth's Motion in Limine. (Hr'g Tr. 35–59, October 22, 2009.) With regard to DMV driving record transcripts, the director testified to the following characteristics:

1. When the courts send the DMV convictions paperwork, a DMV clerk with Data Management Services will enter that information into the individual's electronic driving record. (*Id.* at 39–40.)

2. The DMV computer system has safeguards to ensure that conviction reports and other information are accurate. (*Id.* at 45.) These include requiring correct identification information in order to retrieve the file from the database (*id.* at 45, 52-53), and the use of passwords and pass codes in order to prevent unauthorized access into the files (*id.* at 46).

3. The DMV clerks do not have personal knowledge of the court proceeding resulting in conviction reports. (*Id.* at 41.)

4. The DMV can recover an individual's driving record in a number of situations:

a. The DMV customer service center will access an individual's driving record before deciding whether to issue any individual a driver's license. (*Id.* at 42, 58.)

b. The DMV customer service center will ensure that any suspension period imposed by the courts has ended before issuing a driver's license to anyone who requests one. (*Id.*)

c. The DMV customer service center can create a record for someone who needs handicap identification for a car they do not drive, even when they do not have a driver's license. (*Id.* at 43.)

d. Law enforcement can request the driving record transcript, which results in the same transcript as the one a customer can obtain from the DMV customer service center. (*Id.* at 58.)

e. The Commissioner of Revenue uses DMV records to make tax assessments, the Department of Social Services uses DMV records to determine welfare and Medicaid eligibility, and Medicare uses DMV records to establish program eligibility. (*Id.*)

5. For traffic convictions, the DMV normally and routinely gathers conviction and suspension information and enters the information into the records as part of its regulatory functions, and the DMV computers automatically assign demerit points based on the information. (*Id.* at 48, 57.)

6. With regard to habitual offender revocation, the DMV computer system determines whether an individual's violations amount to habitual offender status based on the record, and, if so, the individual is notified. (*Id.* at 47, 54.)

7. When law enforcement requests the driving transcript from DMV, DMV has no knowledge of what specific proceeding will take place in a court, nor does DMV analyze the entries when law enforcement requests driving transcripts. (*Id.* at 48.)

8. When law enforcement officials request driving records from the Virginia Criminal Information Network ("VCIN"), additional security systems limit State Police access to the records. (*Id.* at 49.)

9. The Certificate at the end of the driving record transcript does not indicate that the Commissioner has personal knowledge of the record based on his own review of it. (*Id.* at 50–51.) The Certificate is not of the character of an affidavit because "no one is swearing to the fact that this is the record. It is a certification, to the best of our knowledge this is what has been posted on a person's driving record based on information provided to us from the courts or from a customer." (*Id.* at 47–48.)

The certificate reads as follows:

This is to certify, in accordance with Section 46.2-215 of the Code of Virginia, that this machine produced transcript, transmitted by electronic means to Aca L. Killeen is an accurate depiction of the driving record of Carter, Dabney Leonard, DL No. T61-29-7779, as maintained by the Virginia Department of Motor Vehicles as of the date printed above; and that all notice of order indicating personal delivery to the

driver were and received by the driver pursuant to Section 46.2-416 of the Code of Virginia.

> Demerst B. Smit,
> commissioner

(Carter Trans. of Driver 5.)

## Issues Presented

Whether the Confrontation Clause permits a certified transcript of a driving record from the DMV as evidence without the admission of authentication from a custodian of records or other witness from the DMV to establish: (1) Defendant's status as an habitual offender; (2) Defendant's prior conviction for driving after being declared an habitual offender; and (3) Defendant's notice of his status as an habitual offender.

## Legal Standard

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const., amend. VI. In *Crawford v. Washington*, the United States Supreme Court held that a defendant has the right to confront witnesses who "bear testimony" against him, i.e., those who make a solemn declaration "for the purpose of establishing or proving some fact." 541 U.S. 36, 50–51 (2004). *Crawford* emphasized that the primary objective of the Confrontation Clause is to preclude the admissibility of formal statements obtained through *ex parte* examination or interrogation initiated by government officials in anticipation of criminal litigation. 541 U.S. at 51 (2004). Such testimonial evidence against a defendant is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Id.*

*Melendez-Diaz v. Massachusetts* is the latest in the Supreme Court's recent line of cases regarding a criminal defendant's right to confrontation. *See* 129 S. Ct. 2527 (2009). The trial court had admitted into evidence certificates of analysis detailing the results of forensic testing performed on seized narcotics. *Id.* The Supreme Court held that those certificates were "testimonial" under *Crawford*, and therefore inadmissible unless the forensic analysts who prepared those certificates

testified to the results of the forensic tests at trial, or, if unavailable at trial, be available for cross-examination prior to trial. *Id.* at 2532. The majority stated that the certificates were "functionally identical to live, in-court testimony" that the substances contained cocaine, and thus were plainly affidavits, i.e., "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." *Id.* at 2531, 2532. The rationale for finding the certificates to be testimonial evidence, repeated throughout the majority opinion, was that the certificates were created for the sole purpose of providing evidence against a defendant at trial. *See id.* at 2532, 2538–40.

Thus, even if the certificates qualified as business or public records, ordinarily admissible despite their hearsay status, they would nonetheless be subject to confrontation if created for the purpose of establishing or proving some fact at trial. *See Melendez-Diaz,* 129 S. Ct. at 2532; Fed. R. Evid. 803(6)–(8). For example, a clerk's certificate authenticating an official record is traditionally admissible because it is prepared by a public officer in the regular course of his official duties. *See id.* at 2538–39; Fed. R. Evid. 803(8). However, such a certificate would not be admissible against a defendant without confrontation if the clerk interpreted the substantive contents of the record. *Melendez-Diaz* at 2539 (discussing *State v. Wilson,* 141 La. 404, 409, 75 So. 95, 97 (1917)). Again, the rationale is that a "clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not ... *create* a record for the sole purpose of providing evidence against a defendant." *Id.* (emphasis in the original).

A few Virginia cases have discussed Confrontation Clause issues in light of *Melendez-Diaz,* but they do not offer the Court much guidance with regard to the case at hand. In *Mitchem v. Commonwealth,* the Virginia Court of Appeals was faced with the same issue of whether the Commonwealth's use of a DMV transcript to establish appellant's prior conviction violates the Sixth Amendment, but the Court of Appeals did not decide whether the DMV transcripts are testimonial because the appellant failed to preserve the issue for appeal. 2010 Va. App. LEXIS 18 (January 12, 2010). In *Briscoe v. Virginia,* a case having to do with a statute requiring notice and demand in order for a witness to testify at trial with regard to a certificate of analysis, the United States Supreme Court vacated the judgment of the Supreme Court of Virginia and summarily remanded the case for further proceedings not inconsistent with *Melendez-Diaz* (the remanded case has yet to be decided upon). 2010 U.S. LEXIS 767 (January 25, 2010). In *Walker v. Commonwealth,* the Virginia Court of Appeals

held that admission of the National Automobile Dealers' Association "blue book" as evidence of the value of a stolen van did not violate the *Sixth Amendment,* because the blue book was "a repository of information compiled for uses other than in litigation." 2010 Va. App. LEXIS 33 (January 26, 2010).

*Analysis*

The Commonwealth argues that the transcript of the DMV record is non-testimonial evidence that is admissible without confrontation to prove Defendant's prior habitual offender determination by the DMV and conviction of driving after being declared an habitual offender. (Commw.'s Br. 3, 7, January 25, 2010.) Defendant disagrees on the ground that the transcript is testimonial and cites portions of Virginia Code § 46.2-384 in support of the argument that the transcript is generated for use at trial: (1) that a law enforcement officer shall request a DMV transcript whenever "a necessary element of the offense charged is that the defendant was previously convicted of the same or similar offense" and (2) that the DMV furnishes the DMV transcript to the Commonwealth's attorney "to be held available for the Court in which the person is to be tried for the violation or charge." (Def.'s Br. 2, 4, March 5, 2010.)

A "testimonial statement" is one made with the intent that it be used at trial. *Melendez-Diaz,* 129 S. Ct. at 2539–40. If business or public records were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial, they are not testimonial." *Id.* at 2540. The DMV record was not created for the sole purpose of providing evidence against Defendant at trial. Although the transcript of the DMV record may be used in litigation, as shown by Virginia Code § 46.2-384, the DMV record is created and maintained for the DMV's regulatory purposes, such as the administration of the driver's license, registration, and title laws. *See* Virginia Code § 46.2-200; Hr'g Tr. 38–42, Oct. 22, 2009.

The DMV records are kept for the DMV's administrative purposes, which include the "administration of the motor vehicle license, registration, and title laws; the issuance, suspension, and revocation of driver's licenses; the examination of applicants for and holders of driver's licenses; the administration, training, disciplining, and assignment of examiners of applicants for driver's licenses; the administration of the safety responsibility laws, fuel tax laws, the provisions of this title relating to transportation safety, and dealer licensing laws; the registration of

carriers of passengers or property and vehicles … and any other services that may be required to create a single point of contact for motor carriers operating within and without the Commonwealth, including the operation of permanent and mobile motor carrier service centers." Virginia Code § 46.2-200.

Defendant's DMV record would still exist, regardless of whether Defendant was ever prosecuted. Moreover, since the DMV record was initially prepared before Defendant allegedly committed the crime at issue, the declarant (the preparer of the DMV record) could not know that a transcript of the record would be used as evidence against Defendant for a crime he would commit in the future. As the Court of Appeals has reasoned in prior cases, the DMV record was prepared in a non-adversarial setting in which "the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present." *Acuna v. Commonwealth*, 2006 Va. App. LEXIS 306, at *8 (2006) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). The DMV record is a "neutral repository of information" created for uses other than in litigation against Defendant. *Michels*, 47 Va. App. at 469 (quoting *Crawford*, 541 U.S. at 50).

Although the DMV record was not created for use against Defendant in litigation, the *transcript* of the DMV record was indeed printed for such use. With regard to the evidentiary use of such a record, the Virginia Code states the following:

> In any such prosecution wherein a necessary element of the offense charged is that the defendant was previously convicted of the same or similar offense, a [certified] copy of … that portion of the transcript relating to the relevant prior conviction, shall be prima facie evidence of the facts stated therein with respect to the prior offense.

Va. Code § 46.2-384. However, DMV clerks uploaded the information comprising the transcript during the regular course of business and for regulatory purposes, and the computer system itself determined habitual offender status based on prior offenses. (Hr'g Tr. 39–40, 57–58.)

The director of DMV Data Management Services testified that individuals can go to the customer service desk at DMV and have the same transcript reproduced for them as would be reproduced for law enforcement under VCIN. (Hr'g Tr. 42, 58.) However, the Defendant

argues that the Defendant's personally requested transcript is not the same one that law enforcement officials obtained, since the transcript reproduced for personal use does not bear the same certification as the one reproduced for law enforcement use. (Exs. A, B to Def.'s Supp. Arg., June 18, 2010.) The Defendant argues that, since the DMV "treats transcripts differently" in such a way, *Melendez-Diaz* confrontations apply to those transcripts for admission at trial. (Def.'s Supp. Arg. 2.) However, nothing is added to the driving record substantively when it is reproduced for law enforcement officials. The fact that the record's use must be the one for which it was printed does not make the record testimonial in and of itself.

Thus, not only is the transcript a mere copy of what is on record at the DMV, but it is also "simply a computer-generated official record 'prepared in a non-adversarial setting'." *Acuna v. Commonwealth*, 2006 Va. App. LEXIS 306, at *8 (2006) (citing *Michels v. Commonwealth*, 47 Va. App. 461 (2006)). The computer terminals generating such transcripts are machines, which are not witnesses or declarants capable of making statements. *See Wimbish v. Commonwealth*, 51 Va. App. 474, 482–84 (2008); *see also United States v. Washington*, 498 F.3d 225, 230 (4th Cir. 2007) ("[S]tatements made by machines are not out-of-court statements made by declarants that are subject to the Confrontation Clause."). To this extent, the Court finds that the DMV transcript, generated by a machine and presented without human analysis or interpretation, is not a testimonial statement under the Confrontation Clause.

Furthermore, although some certificates authenticating business records in criminal cases may be in some doubt after *Melendez-Diaz*, the Court finds that the Commissioner's certification on the DMV transcript is not a testimonial statement under *Melendez-Diaz*. The Supreme Court specifically allows for a clerk to testify to the authenticity of the record or provide a copy of an otherwise admissible record. *Melendez-Diaz*, 129 S. Ct. at 2539. The fact that this may be a "narrowly circumscribed" exception "makes all the difference in the world." *Melendez-Diaz* at 2539. In *Grant v. Commonwealth*, the Virginia Court of Appeals held that the attestation clause contained in a certificate of breath analysis was testimonial under *Melendez-Diaz*, 54 Va. App. 714, 720 (2009). Virginia law requires the preparer of the certificate memorializing the results of breath analysis for the purposes of prosecution to sign an attestation clause in which the preparer confirms the accuracy of the test and that the test was conducted pursuant to the regulations of the Department of Forensic Science. *See* 54 Va. App. at 721–22. The Court of Appeals found that the attestation clause at issue in *Grant* did more than just certify to the

authenticity of the underlying record; it was a substitute for the breath-test operator's live in-court testimony that he properly performed the test, and therefore was testimonial under *Melendez-Diaz. See id.*

In the case at hand, however, the certification on the DMV transcript merely states that it is an accurate depiction of the record held at the DMV. (Hr'g Tr. 47–48.) Thus, the Commissioner's statement merely authenticates a pre-existing record maintained by the DMV, rather than creating a new record that would serve as substantive evidence against the Defendant. Accordingly, the Court finds that the certificate on the DMV transcript is not testimonial under *Melendez-Diaz* and is admissible without confrontation to prove Defendant's prior determination of an habitual offender and prior conviction of driving after being declared an habitual offender.

Finally, Defendant argues that this Court should rule that the DMV transcript is inadmissible to prove Defendant's prior conviction on the basis that the transcript may be inaccurate. (Def.'s Br. 2–3.) But the purpose of the *Confrontation Clause* is to ensure a procedural reliability of evidence, rather than a substantive guarantee of reliability. *Melendez-Diaz*, 129 S. Ct. at 2536 (quoting *Crawford*, 541 U.S. at 61–62 ("[The Confrontation Clause] commands, not that evidence be reliable, but that reliability be assessed in a particular manner . . .")). Thus, the substantive reliability or accuracy of DMV transcripts is not a factor in the determination of whether the transcript is testimonial evidence subject to the Confrontation Clause. The Court need only consider factors set out in *Crawford* and *Melendez-Diaz*.

### Notice

The Defendant has argued that under *Bishop v. Commonwealth*, 275 Va. 9, 654 S.E.2d 906 (2008), the DMV transcript should not be admissible to prove that the defendant received *notice* of his declaration as an habitual offender. (Def.'s Resp. 6–8.) However, this is an argument relating to sufficiency of evidence, not admissibility. Whereas the issue in *Bishop* was whether the DMV transcript itself satisfied the Commonwealth's burden of proof for *convicting* the defendant of driving a vehicle after having been declared a habitual offender, the issue in the case at hand is whether the DMV transcript is testimonial evidence under the *Confrontation Clause. See* 275 Va. 9, 11.

Accordingly, the Court holds that the DMV record is not testimonial and is admissible without confrontation as evidence of

Defendant's prior determination of habitual offender status, his prior conviction of driving after being declared an habitual offender, and that the Defendant had notice of his status as an habitual offender.

## Conclusion

For the reasons set above, the Court grants the Commonwealth's Motion in Limine.