COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and White
Argued at Norfolk, Virginia

UNPUBLISHED

BRYAN CARL CAGE

v.      Record No. 0978-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
DECEMBER 13, 2022

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

Diane P. Toscano (Toscano Law Group, P.C., on brief), for
appellant.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


In June 2017, Bryan Carl Cage ("appellant") opened fire on a team of Virginia Beach

police officers—wounding a detective—as they entered his apartment to serve a search warrant

for child pornography. After a seven-day trial in the Virginia Beach Circuit Court (the "trial

court"), a jury convicted appellant on all 144 charges related to both the shooting and the

recovered child pornography.

Appellant now appeals, arguing the trial court erred when it joined the shooting charges

and child-pornography charges for a single trial. He also claims the trial court wrongly excluded

evidence that a police dog attacked him after he surrendered to police.

Assuming without deciding the trial court erred in joining the offenses for a single trial,

the overwhelming evidence of appellant's guilt rendered that putative error harmless. And the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

trial court did not err in excluding the evidence of the police-dog attack.  This Court therefore affirms appellant's convictions.

## I.  BACKGROUND

*The Shooting & Standoff*

Before his arrest, appellant lived a secluded life in a second-level apartment of the detached garage located on his mother's property in Virginia Beach.  His mother and stepfather lived in the main residence, and they rarely saw appellant unless he asked them for a ride.  Appellant lived alone in the apartment for over ten years, forbidding anyone—including his parents—from entering.

After a year-long investigation, detectives with the Virginia Beach Police Department (the "VBPD") obtained a search warrant to search the property, including the detached garage, for evidence of child pornography.

At 6:20 a.m. on June 13, 2017, detectives and officers with the VBPD, along with agents and forensic examiners from the United States Department of Homeland Security, arrived at the property to execute the warrant.  Approximately fourteen officers split into two teams—one to search the main residence and the other to search appellant's apartment in the detached garage. The first team knocked on the front door of the residence and announced its presence; appellant's parents exited without incident.

Meanwhile, the second team went to the back of the property to the detached garage.  The members of the second team, led by Detective Ryan Sweeney, knocked on the door and announced their presence and intent to execute a search warrant.  When no one answered, the team used a battering ram to knock down the door.

The ground-level garage door opened to a stairway, which led to a second locked door at the top with no landing.  Detective Sweeney led the team of officers up the stairs as they again

announced their presence. At the top of the steps, Detective Sweeney and another detective worked together to break through the locked door.

On breaching the door, Detective Sweeney stepped inside and began to turn to his right to face the apartment's living space. Almost immediately, appellant opened fire with a .223-caliber M6 rifle from that direction. Two bullets struck Detective Sweeney in his right shoulder and upper arm, and he "ended up back in the staircase on [his] back[,] about maybe a third of the way down the staircase." With one arm numb, Sweeney picked up his handgun with his other hand and began firing toward the top of the stairs. No other officers advanced through the door.

As appellant's gunfire continued to "com[e] through the walls," two other officers also fired their weapons toward the top of the steps. Other officers fell as they scrambled to escape, but the door at the bottom of the stairs had closed, temporarily blocking their exit. After about a minute, the team forced open the first-floor door. Bullets continued to erupt from the wall as Detective Sweeney and the rest of the team retreated down the stairs and out of the building. The officers took cover behind a nearby car to treat Detective Sweeney and wait for the Special Weapons and Tactics ("SWAT") team to arrive.

A standoff ensued for approximately the next five hours. During that time, police officers shouted through bullhorns, demanding that appellant exit the garage. But appellant did not respond.

As he remained holed up in the apartment, appellant logged on to one of his computers. At 7:17 a.m., he opened a peer-to-peer file sharing program, eMule, which he often used to share child-pornography files online. At 10:44 a.m., he initiated a large file transfer, moving 1,868 images and videos of pornography from his desktop computer to an external hard drive. The "vast majority" of those files were adult pornography, but they also included "a couple" files of

child pornography and over 700 "child erotica"[1] files. He began a second transfer at 10:54 a.m., moving a total of 1,510 files, which included "over 600 child erotica files and two child abuse files," from the external hard drive to the desktop computer.[2] Those bulk transfers continued for several hours, long past the end of the standoff, until investigators later seized the computers.

In the standoff's final hour, the SWAT team fired rubber bullets through the windows of the garage apartment. Officers heard appellant "screaming" from the apartment, and appellant eventually descended the apartment stairs and stepped outside to surrender.

As appellant walked out of the apartment, he "ultimately [got] down on the ground but was not obeying all of the SWAT officers' . . . commands." A police dog then rushed appellant and bit the "upper part of his back leg." While the Commonwealth later asserted the dog escaped from its handler, appellant contended the dog attack served as one example of what he claimed were "aggressive police tactics" used in the raid on his home.

*The Recovered Evidence*

An investigation of the apartment and subsequent ballistics analysis showed appellant had fired off at least 39 rounds from his M6 rifle during his initial confrontation with the team of officers. Police recovered from inside the apartment the M6 rifle, a camouflage vest containing a 9-millimeter Beretta handgun and multiple magazines, and a cache of other firearms in a storage room. They also discovered a little over five pounds of marijuana.

---

[1] A testifying investigator at trial explained that a "child erotica file" refers to a "sexualized image" of a child but does not depict a "child engaged in a sexual act" or a child's genitalia.

[2] In addition to transferring files, appellant used his computer during the standoff to check news articles about the ongoing standoff and his earlier shooting of Detective Sweeney.

In total, investigators found approximately 15,000 images or videos of child pornography and child sexual abuse on multiple electronic devices in appellant's apartment. The "created dates" on some of the images went back as far as February 2003.

*The Shooting Charges & the Commonwealth's Original Motion in Limine*

Appellant was indicted December 18, 2017, on multiple counts related to the shooting—most notably, attempted murder of a law enforcement officer under Code § 18.2-31. At that time, appellant was not indicted on any charges related to the recovered child pornography.

On March 6, 2018, the Commonwealth filed a motion *in limine* requesting "to introduce evidence that [appellant] had computers and other related items in his residence that contained 11,420 images or videos depicting child pornography."[3] The child-pornography evidence, the Commonwealth explained, would "establish [appellant's motive] in firing . . . at the police" as they tried to execute a "search warrant to recover [those] images." The Commonwealth also asserted the evidence would show appellant's "'lack of mistake' with regard to whether he knew who was coming up the steps to his door that morning."

After a hearing on May 29, 2018,[4] the trial court issued an order granting the motion, saying the Commonwealth could "introduce one photo of child pornography," oral testimony "that there were approximately 11,000 similar images or videos found on" appellant's devices, and testimony about the "activity ongoing on the computer on the date of the alleged offense." Appellant maintained his objection.[5]

---

[3] At that time, the Commonwealth had still not yet filed charges for the child pornography.

[4] The record does not include a transcript from that hearing. It includes only the Commonwealth's motion and the order ruling on the motion.

[5] Appellant moved the court to reconsider its decision on the image of child pornography in July 2019, which the court denied in November 2019. That order stated: "Based upon this ruling, without [the defense] waiving [its] objection, the Defense and Commonwealth . . . agreed

*The Child-Pornography Charges & the Commonwealth's Motion for Joinder*

Following considerable delay without a trial on the shooting charges, appellant was indicted on May 27, 2020, on one count of child pornography possession, first offense, as well as 99 counts of child pornography possession, subsequent offense—all for the child pornography found in his apartment the day of his arrest.

Before trial, the Commonwealth filed a motion for joinder, pursuant to Rule 3A:10, as to the child-pornography charges and shooting charges, asking for a single trial for all the charges against appellant.

In its motion, the Commonwealth asserted that "police recovered over 14,000 images of child pornography on the various computers and external drives in the defendant's residence." The Commonwealth argued the shooting charges and child-pornography charges were "connected offenses" and therefore subject to joinder. It added that "[t]he jury will be told that detectives were at the residence to serve a search warrant to look for child pornography." Moreover, the charges comprised a "common plan" with the goal of "view[ing] and trad[ing] child pornography." The Commonwealth's motion also explained that Virginia Rule of Evidence 2:404(b) would not prevent joinder because the shooting evidence was admissible to show appellant's motive, intent, and lack of mistake in shooting at the police.

In response, appellant argued the charges did not meet the "connected" or "common scheme or plan" requirements for joinder under Rule 3A:6 and that, regardless, justice required separate trials.

---

upon the image to be presented." On May 22, 2020, appellant again asked the court to reconsider, citing Virginia Rule of Evidence 2:403. The record does not indicate whether the court ruled on that motion to reconsider.

The trial court heard the motion for joinder at a pretrial hearing on July 1, 2020. It subsequently granted the motion and joined the charges for a single trial.[6]

*The Commonwealth's Motion to Exclude Evidence of the Police-Dog Attack*

At the same pretrial hearing where it granted the motion for joinder, the trial court considered a motion by the Commonwealth to exclude any evidence of the police dog attacking appellant.

The Commonwealth argued such evidence was irrelevant to "whether [appellant] shot Detective Sweeney, used a firearm in a felony[,] or discharged a firearm in an occupied building." At the pretrial hearing, the Commonwealth added that the SWAT officers it planned to call as witnesses "didn't see any dog activity."

Appellant's counsel told the court she initially thought the dog bite was relevant because she had "concerns about the credibility" of certain witnesses, but she had since learned the Commonwealth did not intend to call those witnesses. She told the court that while evidence of the dog bite "may not need to come in," she "want[ed] to reserve [the] right to address that" at trial. After a discussion between the trial court and the parties, appellant's counsel agreed to an order prohibiting mention of the dog bite unless the court later ordered otherwise, reserving appellant's right to ask the court to reconsider the matter outside the presence of the jury.

*The Trial*

Appellant's trial took place from April 26 to May 4, 2021. At the end of the trial, appellant faced 144 charges in total: one count of attempted murder of a law enforcement officer, one count of aggravated malicious wounding, two counts of use of a firearm in the commission

---

[6] Once the trial court granted the motion, appellant's counsel moved the court to reconsider its previous decision to admit a single image of child pornography. The trial court invited her to submit a written motion on the issue, but the record contains no indication appellant's counsel ever did so.

of a felony, 39 counts of malicious discharge of a firearm in an occupied building, one count of possession of child pornography, first offense, 99 counts of possession of child pornography, subsequent offense, and one count of possession of marijuana.

For the trial, the parties agreed on several stipulations of fact. Consistent with the trial court's rulings on the admissibility of the child-pornography evidence, and without appellant waiving his objection to the admission of child-pornography images, the parties jointly selected "one image of child pornography" for the Commonwealth to admit at trial. They further stipulated that police recovered at least 100 images of child pornography from appellant's devices. The parties also later stipulated to the admission of a 12-page spreadsheet containing file details of some of the discovered child pornography.

The Commonwealth introduced into evidence the names of several recovered child-pornography files—most of which included explicit or implicit, and often graphic, sexual references to children. Many of those file names were in the parties' stipulated spreadsheet, which included the "file names, image number[s], [the] device[s]" they were on, the file paths, and the dates the files were created and last accessed. The Commonwealth also admitted a list of appellant's internet searches for child pornography—which comprised terms making explicit and implicit sexual references to children. Investigators further noted that one of appellant's computers contained software titled "Window Washer," which is "used to . . . eliminate . . . [a user's] history on the machine. . . . [and] wip[e] a file from the computer so it's not recoverable."

Many of the officers present for the shooting and standoff testified at trial. After multiple officers testified that appellant complied with police commands as he exited his apartment, appellant's counsel asked the court to reconsider allowing the evidence of the dog attack so appellant could show the use of "aggressive police tactics." The trial court refused.

Appellant testified in his defense. He asserted that he never heard the officers announce themselves or break down his door, and he mistook the officers for a teenaged "gangbanger." He also claimed the police shot at him for hours almost nonstop as they conspired to "take him out" and "cover it up." As for the child pornography, he insisted his devices did not contain child pornography, and if he had downloaded any child pornography, he had done so by mistake and had deleted those files.

Appellant was convicted of all 144 charges. The trial court, at the jury's recommendation, sentenced appellant to a total active sentence of life imprisonment plus 1,248 years and 30 days.[7] This appeal followed.

## II. ANALYSIS

*Joinder of the Shooting Charges and the Child-Pornography Charges*

Appellant contends the trial court erred in granting the Commonwealth's motion for joinder because they were not sufficiently connected and justice required separate trials.[8] But

---

[7] Appellant received: life imprisonment for the attempted murder of a law enforcement officer, 50 years for aggravated malicious wounding, three years for one count of use of a firearm in the commission of a felony and five years for the other (eight years total), five years for each count of malicious discharge of a firearm in an occupied building (195 years total), five years for the first offense of possession of child pornography, ten years for each subsequent offense of possession of child pornography (990 years total), and 30 days for possession of marijuana.

The trial court also imposed an additional, suspended term of three years and ordered post-release supervision upon appellant's release, pursuant to Code § 19.2-295.2(A).

[8] Rule 3A:10 provides a limited joinder rule for a single defendant accused of multiple offenses. It allows for "an accused to be tried at one time for all offenses then pending against him, if justice does not require separate trials and (i) the offenses meet the requirements of Rule 3A:6(b) or (ii) the accused and the Commonwealth's attorney consent thereto." Rule 3A:10.

Rule 3A:6(b) (read in conjunction with Rule 3A:10) further explains that, to be joined, the "[t]wo or more offenses" must be "based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan."

Determining whether justice requires separate trials requires the trial court to consider whether "highly prejudicial evidence of one of the crimes is not admissible in the trial of the other." *Severance v. Commonwealth*, 67 Va. App. 629, 647 (2017) (quoting *Long v. Commonwealth*, 20 Va. App. 223, 226 (1995)). That requirement thus imposes a "duty" on the

even when joinder was granted in error, this Court must decide whether that error was harmless before reversing the convictions. *Cousett v. Commonwealth*, 71 Va. App. 49, 60 (2019). Assuming without deciding that the trial court erred in joining the shooting and child-pornography offenses, that alleged error was harmless in this case.

For non-constitutional error, "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached," the error is harmless, and this Court must affirm. Code § 8.01-678. Although the harmless-error analysis is not a sufficiency-of-the-evidence analysis, *Commonwealth v. White*, 293 Va. 411, 422 (2017), a non-constitutional error remains harmless if "the evidence of guilt [is] so overwhelming that it renders the error insignificant such that the error could not have affected the verdict," *Commonwealth v. Kilpatrick*, ___ Va. ___, ___ (Aug. 4, 2022) (citing *Haas v. Commonwealth*, 299 Va. 465, 469 (2021)).

Typically, an error in joining offenses "may not be harmless if evidence related to each of the counts would have been *in*admissible in a separate trial of any of the other counts." *Purvis v. Commonwealth*, 31 Va. App. 298, 308 (2000); *Cousett*, 71 Va. App. at 61. At the other end of the spectrum, offenses may be joined for trial if justice does not require separate trials, Rule 3A:10, and if the evidence as to each offense has "legitimate probative value" as to the charges joined for trial. *See Severance v. Commonwealth*, 67 Va. App. 629, 647 (2017) (applying Rule of Evidence 2:404(b) to determine whether justice would require separate trials); *see also* Va. R. Evid. 2:404(b). Moreover, the rules of evidence allow the use of evidence of other crimes or

court considering a joinder motion to apply Rule of Evidence 2:404(b) to determine whether evidence of the one crime would have been admissible in the trial for the other crime, and vice versa. *Id.*; *see also* Va. R. Evid. 2:404(b) (generally excluding "evidence of other crimes, wrongs, or acts . . . to prove the character trait of a person in order to show that the person acted in conformity therewith," but allowing such evidence if (1) its "legitimate probative value . . . outweighs its incidental prejudice" and (2) "it tends to prove any relevant fact pertaining to the offense charged").

wrongs if they are probative of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if [the evidence shows both to be] part of a common scheme or plan." Va. R. Evid. 2:404(b).

In the instant case, some evidence relating to the child pornography charges would be admissible in a separate trial on the shooting charges, and vice versa, in order to prove motive, intent, and lack of mistake. But the issue in the instant case becomes whether *all* the evidence pertaining to each charge would be admissible as to the other charge or if that would exceed the "legitimate" probative value requirement of Rule of Evidence 2:404(b). That question, however, is reserved for another day because the evidence in this case is so overwhelming as to each charge that admitting all the evidence would be harmless in any event. In the case at bar, "assuming without deciding that the evidence relating to" one set of charges "would not be admissible in the trial" for the other set of charges, this Court concludes "the impact of that evidence in the joint trial was harmless error" because "the other evidence of [the accused's] guilt relating to the respective [sets of charges] was overwhelming." *Angel v. Commonwealth*, 281 Va. 248, 266 (2011).

The other admissible evidence against appellant for each set of charges was nothing less than overwhelming. His devices, recovered from his apartment that he forbade anyone from entering, held thousands of files of child pornography. Indeed, appellant stipulated at trial that his devices contained at least 200 such images. Additionally, the trial court admitted only one child-pornography image. That evidentiary limitation lessened the possible prejudice the images of child pornography could have imposed for the shooting charges.

Despite his claims that he mistakenly downloaded child pornography, appellant's search history—filled with sexual references to children—showed he specifically sought it out. And the

files' titles make it implausible he did not know the content of the files that filled his computers and hard drives.

As for the shooting charges, appellant himself admitted to shooting at the police officers in his home. While he insists he mistakenly acted in self-defense, no evidence other than his self-serving testimony supported his claim of mistake. On the contrary, the fact that appellant shot at the officers after they announced themselves and their intent to search, and then knocked down appellant's door with a battering ram, supports a conclusion that appellant intended to impede the officers' search by killing them.

Given the overwhelming admissible evidence of his guilt for each set of crimes and the trial court's limitation on certain prejudicial evidence at trial, this Court can conclude the putative "error did not influence the jury[] or had but slight effect," and was therefore harmless. *Clay v. Commonwealth*, 262 Va. 253, 260 (2001) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)); *see also Angel*, 281 Va. at 266.

*Evidence of the Attack by the Police Dog*

Appellant also assigns error to the trial court's exclusion of the evidence that a police dog attacked him as he surrendered. The dog bite, appellant says, was relevant to the credibility of the testifying police officers—including whether they announced their presence and whether appellant or the police fired first. He also contends the evidence would have established the police used "aggressive . . . tactics" during the raid.

"Evidence that is not relevant is not admissible." Va. R. Evid. 2:402(a). The relevancy of evidence turns on whether the evidence has "any tendency to make the existence of any fact in issue more probable or less probable than it would without the evidence." Va. R. Evid. 2:401. "Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v.*

*Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)).

The trial court did not err in excluding the evidence. The dog bite did not affect the likelihood that the testifying officers were truthful when recounting their initial confrontation with appellant or whether they knocked and announced themselves. Finding so would impute any possible bias from the dog's handler to the other officers on the scene that day. According to the Commonwealth, the testifying officers did not witness the dog attack. And the attack by the police dog occurred hours after the initial shooting. Even appellant's counsel agreed at the pretrial hearing that she saw no need—at least at that point—to present evidence of the dog bite at trial. Because a reasonable jurist could conclude the evidence was not relevant, the trial court did not abuse its discretion.

## III. CONCLUSION

Any possible error in joining the offenses was harmless given the "overwhelming" admissible evidence of appellant's guilt for both sets of charges. *Kilpatrick*, ___ Va. at ___; *Angel*, 281 Va. at 269. Moreover, the trial court did not err when it excluded evidence of the police-dog attack. For those reasons, this Court affirms appellant's convictions.

*Affirmed.*